**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL K. DESMOND, not individually, but as Chapter 7 Trustee for the Bankruptcy Estate of YELLOW CAB AFFILIATION, INC.,** | ) ) ) ) | |
| | ) | |
| **Plaintiff,** | ) ) | |
| | ) | |
| **v.** | ) ) | 17 C 8326 |
| **TAXI AFFILIATION SERVICES LLC; MICHAEL LEVINE; PATTON R. CORRIGAN; EVAN TESSLER; GARY SAKATA; JOHN MOBERG; YELLOW CAB ASSOCIATION INC. A/K/A YELLOW CAB ASSOCIATION CO.; YELLOW GROUP LLC; YELLOW MEDALLION HOLDINGS LLC; CL MEDALLION HOLDINGS LLC; TAXI MEDALLION MANAGEMENT LLC; PEOPLE MOVER LLC; and YELLOW CAB PARTNERS LLC,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Judge John Z. Lee** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael K. Desmond ("the Trustee") is the Chapter 7 Trustee for the Bankruptcy Estate of Yellow Cab Affiliation, Inc. ("YCA"), a former Chicago taxicab affiliation. The Trustee has filed sixteen counts against the following Defendants: Taxi Affiliation Services LLC ("TAS"); Michael Levine; Patton R. Corrigan; Evan Tessler; Gary Sakata; John Moberg; Yellow Cab Association, Inc. ("New YCA"); Yellow Group LLC ("Yellow Group"); Yellow Medallion Holdings LLC ("YMH"); CL Medallion Holdings LLC ("CLMH"); Taxi Medallion Management LLC ("TMM"); People Mover, LLC ("People Mover"); and Yellow Cab Partners LLC ("Yellow Cab Partners"). In short, the Trustee claims that Defendants engaged in a scheme to render YCA

insolvent, so that it could not pay its creditors, and then established a new company that appropriated YCA's valuable trade dress.

Defendants now move to dismiss the Trustee's claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendants argue that the Trustee's claims fail to meet the heightened pleading standard of Rule 9(b), which requires that allegations of fraud be pleaded with particularity. Defendants also contend that the Trustee's claims are precluded by prior bankruptcy proceedings and barred by the applicable statutes of limitations. Defendants have also moved for sanctions pursuant to Rule 11. For the following reasons, Defendants' motion to dismiss [22] is granted in part and denied in part. The motion for sanctions [36] is denied.

## Background[1]

YCA was a Chicago-based taxicab affiliation from 1996 until 2016, when it dissolved. Compl. ¶ 2, ECF No. 1. It had over 1,600 members who paid it dues pursuant to affiliation agreements. Id. ¶¶ 4–5. Yellow Group, which owned YCA, owned and licensed to YCA the design mark YCA used on its vehicles. Id. ¶¶ 6–7, 99, 159–60. Levine, Corrigan, Sakata, and Tessler ("YCA's officers and directors") were officers and directors of YCA. Id. ¶¶ 35–37, 39, 101–02. Levine was the majority owner of People Mover, which held a majority interest in Yellow Group. Id. ¶ 35. The other 45% of Yellow Group was owned by Yellow Cab Partners, an entity wholly owned by Corrigan. Id. ¶ 36. Levine and Corrigan also owned or managed YMH, CLMH, and TMM. Id. ¶¶ 44–46.

YCA passenger Marc Jacobs was injured while riding in a taxicab in 2005. Id. ¶¶ 8, 55–56. Jacobs filed suit in September 2005 against the driver of the vehicle, as well as the owner of

---

[1] The following facts are taken from the Trustee's Complaint and are accepted as true at the motion to dismiss stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

the vehicle who was a YCA member, and YCA was later added as a defendant. *Id*. ¶ 8.[2]  Around this time, YCA's officers and directors became aware of the lawsuit and YCA's potential liability. *Id.* ¶¶ 9, 59, 66.

According to the Complaint, in order to prevent creditors from reaching YCA's assets, YCA's officers and directors established TAS in 2006, and Defendant John Moberg became TAS's president.  *Id.* ¶¶ 10, 38, 57, 59–60, 66.  Defendants then engaged in a series of transactions to defraud YCA's creditors and prevent YCA from being able to satisfy a possible future judgment against it in the Jacobs lawsuit.  *Id.* ¶¶ 9–15, 56–66, 203–13.  For example, YCA paid TAS approximately $6 million per year pursuant to an unfavorable services agreement that had not been negotiated at arms' length.  *Id.* ¶¶ 10, 12, 69–74, 82.  TAS continued to charge and collect these fees from YCA despite a decrease in the scope of services it provided, and YCA's officers and directors did not attempt to renegotiate the agreement.  *Id.* ¶¶ 82–86.

In addition, TAS collected and retained all payments from YCA members pursuant to their affiliation agreements with YCA.  *Id.* ¶¶ 11, 57, 79.  TAS then transferred portions of that revenue, disguised as "management fees" and "referral fees," to YCA's officers and directors, Moberg, and affiliated companies, including TMM.  *Id.* ¶¶ 57–58, 62, 64, 87–97, 110–11, 120–26.  While YCA was still operating, YCA's officers and directors failed to keep accurate records and commingled YCA and TAS funds.  *Id.* ¶¶ 187–202.  Using YCA revenue that had been transferred to them, Levine and Corrigan purchased and sold taxicab medallions, but failed to distribute any of the

---

[2]     Defendants correctly point out that YCA was added as a defendant in the Jacobs case in August 2007 and was served in January 2008.  Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem. Supp.") at 5, ECF No. 23.  The Trustee admits that a reference in the Complaint to YCA being a party to the lawsuit in 2005 is an error.  Pl.'s Mem. Opp. Mot. Sanctions at 7, ECF No. 45.

profit to YCA. *Id.* ¶¶ 16–20, 175–86. As a result, YCA was insolvent and unable to pay its creditors from 2006 through 2016. *Id.* ¶¶ 14–15, 61.

Jacobs obtained a $26 million judgment against YCA in 2015. *Id.* ¶ 21. YCA then filed for Chapter 11 bankruptcy, which was converted to a Chapter 7 bankruptcy on November 3, 2016. *Id.* ¶¶ 21, 24, 53, 127. TAS informed YCA on November 15, 2016, that it would no longer provide services to YCA. *Id.* ¶¶ 26, 138. This forced YCA to cease business operations almost immediately. *Id.* ¶¶ 30, 136, 141.

On November 17, 2016, certain Defendants formed a new taxicab affiliation, Yellow Cab Association, Inc. ("New YCA"), to solicit members away from YCA. *Id.* ¶¶ 28, 129–30, 132, 145, 151–52. New YCA is wholly owned by Moberg. *Id.* ¶¶ 38, 150. After its formation, New YCA used mobile data terminals and other taxicab equipment that belonged to YCA. *Id.* ¶¶ 153–57. In addition, New YCA used the same color scheme and design mark that YCA had used, merely replacing "Affiliation" with "Association." *Id.* ¶¶ 29, 166, 168. This tricked customers into believing that New YCA and YCA were one and the same. *Id.* ¶¶ 158–74.

Based on these events, the Trustee brings the following claims: breach of fiduciary duty (Count I); tortious interference with contractual relations (Count II); tortious interference with prospective business advantage (Count III); violations of the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/5 and 160/6 (Counts IV through IX); recovery of avoided transfers under 11 U.S.C. § 550 (Count X); conversion (Counts XI and XII); false advertising in violation of the Lanham Act (Count XIII); unfair competition under Illinois common law (Count XIV); violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2 (Count XV); and violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2 (Count XVI). Defendants have moved to dismiss each of the claims.

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, allegations of fraud must be pleaded in conformance with Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Such circumstances include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated. See *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requirement ensures that defendants have fair notice of a plaintiff's

5

claims, providing an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990).

## Analysis

Defendants move to dismiss all claims under Rule 12(b)(6) and move for sanctions under Rule 11. Defendants argue that the Trustee's claims should be dismissed because they fail to meet the heightened pleading standard of Rule 9(b). The Trustee disagrees, noting that none of the sixteen counts is based in fraud. Defendants also argue that the Trustee's claims are barred by the statutes of limitations and are precluded by prior bankruptcy proceedings. The Trustee, in turn, contends that the claims are not time-barred because tolling may apply and that the bankruptcy judge's findings have no preclusive effect.

## I. Statutes of Limitations

First, Defendants seek dismissal of all the Trustee's claims based on the applicable statutes of limitations, which vary in lengths of up to five years. As Defendants point out, some of the Trustee's claims date back to 2006, and this action was filed 11 years later in 2017. The Trustee in turn contends that the claims are not time-barred on their face because tolling may apply.

The Trustee is correct. Dismissal of claims at the pleading stage based on an affirmative defense of a statute of limitations is appropriate only when a plaintiff pleads facts that "affirmatively show that his suit is time-barred." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). And, as is pertinent here, Illinois law (which the parties implicitly agree governs here) recognizes the tolling doctrine of "adverse domination," a "corollary to the discovery rule," which is applied in certain limited circumstances to toll a statute of limitations until the time at which a corporation is deemed to have "knowledge" that it has been harmed. *See In re Sandburg Mall Mgmt. LLC*, 563 B.R. 875, 887 (Bankr. C.D. Ill. 2017) (explaining the applicability of adverse

6

domination); *In re Mollie Enters., Inc.*, 559 B.R. 501, 506 (N.D. Ill. 2016) (tolling statute of limitations on bankruptcy trustee's claim until the date when the trustee was appointed, based on the adverse domination doctrine). Moreover, the doctrine "creates a rebuttable presumption that knowledge of [an] injury will not be available to [a] corporation as long as the corporation is controlled by wrongdoing officers and directors." *In re Mollie Enters., Inc.*, 559 B.R. at 505.

Here, the Trustee contends that, from 2006 to 2016, Defendants had control of YCA and were acting against its interest. That control did not end until the Trustee's appointment in 2016. Compl. ¶ 127. This action was filed exactly one year later. As such, it is possible that the statutes of limitations on the Trustee's claims were tolled until he was appointed in 2016, and so dismissal based on the statutes of limitations is not warranted at the pleading stage.

## II. Preclusive Effect of the Bankruptcy Court's Findings

Defendants also contend that the Trustee's Complaint should be dismissed because the claims are precluded by the Bankruptcy Court's findings. Defs.' Mem. Supp. at 10. YCA filed for Chapter 11 bankruptcy in 2015, and the case was converted to a Chapter 7 case in 2016. Prior to the conversion, the creditors committee sought the appointment of a Chapter 11 trustee. Bankruptcy Judge Doyle denied the motion, largely relying on the report of a court-appointed examiner who, after an investigation of TAS's relationship with YCA, had found no evidence of fund diversion or other wrongdoing. *In re YCA*, No. 15-B-9539, ECF No. 972. Defendants now argue the Trustee's claims are barred by Judge Doyle's findings. Defs.' Mem. Supp. at 10–11.

For his part, the Trustee contends that neither *res judicata* nor collateral estoppel applies because denying the appointment of a Chapter 11 trustee is not a "final judgment," a required element of both preclusive doctrines. Pl.'s Mem. Opp. Mot. Dismiss ("Pl.'s Mem. Opp.") at 10–12, ECF No. 33. *See Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (noting that collateral

estoppel requires "a final judgment on the merits"); *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (stating that *res judicata* applies when "there was a final judgment on the merits rendered by a court of competent jurisdiction").

When preclusion is raised, the party asserting it "bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Jones v. City of Alton, Ill.*, 757 F.2d 878, 885 (7th Cir. 1985). This is a heavy burden, and preclusion cannot be invoked based on "pure speculation as to the finding of the trial court in the prior litigation." *Id.* (internal quotation marks and citations omitted). Simply put, Defendants have failed to show that Judge Doyle's findings, issued in conjunction with her decision not to appoint a Chapter 11 trustee, constituted a final judgment on the merits of YCA's fraud allegations against TAS. And, indeed, Judge Doyle's statements indicate that, although she did not see the need to appoint a Chapter 11 trustee, she was not making a binding determination as to the existence (or nonexistence) of fraud. *See In re YCA*, No. 15-B-9539, ECF No. 972 at 24:10–13 (noting that "[t]he committee can still further pursue this issue through normal discovery channels, but it does not justify the great expense of bringing in a trustee"). The Court therefore declines to dismiss the Trustee's claims as precluded by the prior bankruptcy proceedings on this record.

## III. Whether Rule 9(b) Applies

The parties also disagree as to the pleading standard that should be applied to the Trustee's claims. Defendants argue that the entire Complaint must be pleaded with particularity under Rule 9(b) and that the claims fail to meet that standard. Defs.' Mem. Supp. at 4. In response, the Trustee contends that Rule 9(b) does not apply to all the claims. He also avers that, in any event, the claims satisfy Rule 9(b).

Rule 9(b) applies not only to claims of fraud but also to those that "sound[] in fraud," meaning those "premised upon a course of fraudulent conduct." *Borsellino*, 477 F.3d at 507 (internal quotation marks omitted). Courts within the Seventh Circuit have found each of the Trustee's claims to be subject to Rule 9(b) in such cases. *See, e.g., Ferenc v. Brenner*, 927 F. Supp. 2d 537, 547–48 (N.D. Ill. 2013) (breach of fiduciary duty); *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 851–52 (N.D. Ill. 2012) (same); *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 794 (N.D. Ill. 2015) (tortious interference with prospective economic advantage); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011) (tortious interference with contractual relations); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078–79 (7th Cir. 1997) (UFTA); *Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst.*, No. 06 C 7010, 2010 WL 3274283, at *2 (N.D. Ill. Aug. 17, 2010) (same); *In re Gluth Bros. Constr., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (11 U.S.C. § 550); *Schaufenbuel v. InvestForClosures Fin., LLC*, No. 09 C 1221, 2009 WL 3188222, at *3 (N.D. Ill. Sept. 30, 2009) (conversion); *Montgomery Wards, L.L.C. v. Mease*, No. 99 C 5697, 2000 WL 556758, at *6 (N.D. Ill. May 1, 2000) (same); *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL 6569633, at *7–9 (N.D. Ill. Dec. 21, 2017) (Lanham Act); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3 (N.D. Ill. Apr. 24, 2017) (same); *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 884–85 (N.D. Ill. 2013) (common law unfair competition); *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *3 (N.D. Ill. May 16, 2013) (UDTPA); *VitalGo, Inc.*, 2017 WL 6569633 at *7 n.5 (ICFA).

Here, underlying each of the claims is a purported scheme to siphon money from YCA into other entities owned and operated by Defendants, so that YCA would become insolvent and unable to pay its liabilities. As the Trustee puts it, Defendants plotted to "hinder and evade YCA's

creditors, while continuing to pay themselves through TAS and a web of affiliated companies." Compl. ¶ 32. The claims, which encompass breach of fiduciary duty, tortious interferences, fraudulent transfers, conversion, and deceptive trade practices, all arise out of this fraudulent scheme. In sum, they all are premised a course of fraudulent conduct, and so Rule 9(b) applies to each of them. The Court will proceed to consider whether each of the claims satisfies that standard.

## IV.    Breach of Fiduciary Duty (Count I)

In Count I, the Trustee brings a breach of fiduciary claim against YCA's officers and directors Levine, Corrigan, Sakata, and Tessler. *Id*. ¶¶ 215–37. In addition, the Trustee seeks to hold Moberg liable under a theory of aiding and abetting. *Id.* ¶ 224. To state a claim for breach of fiduciary duty in Illinois, a plaintiff must plead: "(1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages to the plaintiff as a result of that breach." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 820 (N.D. Ill. 2014).

Illinois law also recognizes aiding-and-abetting liability for breach of fiduciary claims. *See Premier Capital Mgmt., LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *2 (N.D. Ill. March 24, 2008) (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003)). To state such a claim, a plaintiff must plead: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as a part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Id.*

The Trustee claims that YCA's officers and directors (a) transferred YCA revenue to TAS pursuant to an unfavorable services agreement that gave TAS complete control over YCA; (b) used YCA revenue to purchase taxicab medallions, which YCA's officers and directors then sold for their personal gain; (c) solicited YCA members to join other taxicab affiliations, including New

YCA; and (d) failed to collect YCA's receivables or keep accurate records. *Id.* ¶¶ 220–35. The Trustee also contends that Moberg aided in the breach, acting as Sakata's supervisor and giving him direction while he was an officer of YCA. *Id.* ¶ 103.

This claim satisfies Rule 9(b). It identifies specific actors: Levine, Corrigan, Sakata, Tessler, and Moberg. It identifies specific wrongful acts that breached a fiduciary duty, including transferring funds from YCA to other entities, failing to distribute profits to YCA, poaching YCA's members, and failing to maintain records. And it identifies 2006 as the starting point for the ten-year timeframe in which these acts occurred. The claim thus satisfies Rule 9(b)'s "who, what, when, where, and how" inquiry. *See DiLeo*, 901 F.2d at 627. Defendants' motion to dismiss is accordingly denied as to Count I.

## V.    Tortious Interference with Contractual Relations and Tortious Interference with Prospective Business Advantage (Counts II and III)

In Counts II and III, the Trustee brings claims for tortious interference with contractual relations and tortious interference with prospective business advantage against YCA's officers and directors, Moberg, TAS, and New YCA. Compl. ¶¶ 238–54. In Count II, the Trustee contends that these Defendants intentionally "induced YCA's members to breach their Affiliation Agreements with YCA," causing YCA to lose profits and eventually go out of business. *Id.* ¶¶ 238–46. In Count III, he alleges that these Defendants "conspired to prevent YCA from forming additional business relationships with current Members and future members," resulting in lost profits. *Id.* ¶¶ 247–54.

Defendants are correct that these counts fail to satisfy Rule 9(b). The claims state merely that a group of Defendants—consisting of YCA's officers and directors, Moberg, TAS, and New YCA—induced an unspecified amount of YCA members to breach their agreements, at an unspecified time, through unspecified means. And the roles of these Defendants in these activities

11

are left unstated. As such, Counts II and III have not been pleaded with particularity and are dismissed.

## VI.    UFTA (Counts IV through IX)

In Counts IV through IX, the Trustee brings claims under the UFTA. The UFTA covers two types of fraud: actual and constructive. *Cordes & Co., LLC v. Mitchell Cos., LLC*, 605 F. Supp. 2d 1015, 1020 (N.D. Ill. 2009). The Trustee asserts both types of claims against TAS (Counts IV and V); Moberg and YCA's officers and directors (Counts VI and VII); and TMM, YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners (Counts VIII and IX).

Actual fraud occurs "when the debtor has the specific intent to hinder his creditors." *Id.* Constructive fraud occurs "when the debtor conveys assets for inadequate consideration, rendering himself insolvent during a time when he has existing or contemplated indebtedness." *Id.*

As an initial matter, Defendants argue that the constructive fraud claims (Counts V, VII, and IX) should be dismissed because the Trustee has merely recited the elements of the claims, rather than pleaded facts from which an inference of insolvency can be drawn. *See In re Life Fund 5.1 LLC*, No. 09 B 32672, 2010 WL 2650024, at *7 (Bankr. N.D. Ill. June 30, 2010). Defendants are incorrect. The Trustee plausibly alleges that TAS collected funds from YCA pursuant to the services agreement. Compl. ¶¶ 12, 68–69, 265, 280. Moreover, these funds represented 100% of YCA's revenue. *Id.* ¶¶ 13, 57, 80. And, because of TAS's collection of YCA's funds, YCA was not able to pay any creditors for more than ten years after entering into its arrangement with TAS. *Id.* ¶ 15. Drawing all reasonable inferences in the Trustee's favor, an inference of insolvency can be drawn from these facts, and Defendants' motion to dismiss Counts V, VII, and IX based upon this argument is denied.

### A.     UFTA Claims Against TAS (Counts IV and V)

Turning to the counts themselves, in Counts IV and V, the Trustee alleges that, beginning in 2006, Defendants caused YCA to wrongly transfer approximately $5 million per year to TAS under the services agreement.  Compl. ¶¶ 255–70.  Count IV alleges a claim of actual fraud under the UFTA, pointing to various "badges of fraud" showing Defendants' intent to defraud YCA's creditors.  *Id.* ¶¶ 255–63.  Count V is a claim for constructive fraud, alleging that the transfers were given for inadequate consideration and left YCA insolvent.  *Id.* ¶¶ 264–70.

These claims, too, satisfy Rule 9(b).  The claims describe the parties involved in the transfers: YCA and TAS.  They identify the property involved and the time frame in which the transfers occurred: $5 million per year and on an annual basis since 2006.[3]  *Id.* ¶¶ 257, 266.  The claims also clearly state the "how."  Count IV identifies multiple "badges of fraud" that show the transfers were made with intent to defraud YCA creditors—for example, the transfers were made to insiders, were concealed, and consisted of substantially all of YCA's assets.  *Id.* ¶¶ 259.  And Count V adds that the transfers left YCA insolvent because they were made without the exchange of reasonably equivalent value.  *Id.* ¶ 267–68.  Defendants' motion to dismiss Counts IV and V is therefore denied.

### B.     UFTA Claims Against Moberg and YCA's Officers and Directors (Counts VI and VII)

In Counts VI and VII, the Trustee claims that, beginning in 2006, Levine and Corrigan received "a large portion" of YCA's revenue, disguised as "management fees," from TAS on an annual basis. *Id*. ¶¶ 271–85.  Other officers and directors also received transfers from TAS.  *Id.*

---

[3]     Although the Complaint does not identify the specific date of each transfer, the allegations comply with Rule 9(b).  Requiring a plaintiff to plead the specific dates of transactions is not necessary where he has already provided enough information for a defendant to respond specifically, and courts recognize a relaxed rule of pleading when the alleged conduct spans a significant time period or involves numerous occurrences.  *See, e.g., In re Yotis*, 521 B.R. 625, 634 (Bankr. N.D. Ill. 2014).

¶¶ 274–82. Count VI is a UFTA actual fraud claim, while Count VII is a UFTA constructive fraud claim.

Like Counts IV and V, these claims also satisfy Rule 9(b). The Trustee alleges that TAS received transfers from YCA that were then distributed to Levine and Corrigan. *Id.* ¶ 273. The claims identify the amount of the transfers (approximately $1.5 million per year) and the time frame in which they occurred (annually, beginning in 2006). *Id.* ¶¶ 273, 276. And the Trustee has again identified how the alleged conduct occurred, identifying the same badges of fraud and alleging that the transfers left YCA insolvent. *Id.* ¶¶ 276, 283–85. As to Levine and Corrigan, therefore, the motion to dismiss Counts VI and VII is denied.

That said, Counts VI and VII cannot stand against the other Defendants. The Complaint fails to state any specific factual basis for the allegations against Sakata, Tessler, and Moberg, stating only that "upon information and belief," they received "similar fees." *Id.* ¶¶ 274, 282. But "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief," unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Md. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011) (internal quotation marks omitted).

Here, the Complaint provides neither an explanation of why the facts concerning the Defendants other than Levine and Corrigan are unavailable, nor grounds for the Trustee's suspicions that the other Defendants received transfers from TAS. As such, Defendants' motion to dismiss Counts VI and VII is granted as to Sakata, Moberg, and Tessler.

C. **Claims Against TMM, YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners (Counts VIII and IX)**

In Counts VIII and IX, the Trustee alleges that, beginning in 2006, TMM collected a $1 million annual referral fee from YCA pursuant to an alleged oral agreement, without providing reasonably equivalent value. Compl. ¶¶ 286–308. The Complaint states that, "upon information and belief," affiliated companies including YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners "also received portions of YCA's revenue from TAS in a similar fashion." *Id.* ¶¶ 292, 301. But the claims do not adequately describe these Defendants' role in the allegedly fraudulent transfers. And, again, mere information and belief is insufficient to satisfy Rule 9(b). And so, Counts VIII and IX are dismissed as to YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners.

The allegations against TMM, however, are sufficiently pleaded. Like the other UFTA claims, Counts VIII and IX clearly identify TMM and YCA as the parties involved. Moreover, the claims indicate the amount and timing of the transfers and the oral agreement for "referral fees" with YCA by which TMM received those transfers. *Id.* ¶¶ 287–89. And, as in the other UFTA claims, the Trustee identifies various badges of fraud that explain how the transfers violated the UFTA's actual fraud provision. *Id.* ¶ 293. Further, he alleges YCA's insolvency, explaining the UFTA constructive fraud violation. Defendants' motion to dismiss Counts VIII and IX is accordingly denied as to TMM.

## VII. Recovery of Avoided Transfers Under 11 U.S.C. § 550 (Count X)

In Count X, the Trustee seeks to recover from all Defendants the allegedly fraudulent transfers that are the subject of Counts IV through IX. Under § 550 of the Bankruptcy Code, a trustee can recover fraudulent transfers against certain entities, including the initial transferee or the entity or entities for whose benefit the transfer was made, or a transferee of an initial transferee.

15

11 U.S.C. § 550(a). The claim depends on Counts IV through IX because a § 550 claim requires a finding that fraudulent transfers to particular Defendants occurred. *See In re Gluth Bros. Constr., Inc.*, 424 B.R. at 377 (holding that, where a plaintiff failed to state a UFTA claim, it also failed to state a claim under § 550). And so, only to the extent that those claims survive against certain Defendants may Count X also survive. *Id.* Count X is accordingly dismissed as to Moberg, Tessler, Sakata, YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners. Count X is also dismissed as to New YCA because none of the preceding UFTA claims concerns any action by New YCA. As to TAS, Levine, Corrigan, and TMM, the motion to dismiss is denied as to Count X.

## VIII.   Conversion (Counts XI and XII)

In Counts XI and XII, the Trustee brings two conversion claims against all Defendants, contending that Defendants are in possession and control of money owed to YCA under its affiliation agreements (Count XI), Compl. ¶¶ 309–14, and that Defendants are in possession of cash receivables and equipment owned by YCA (Count XII), *id.* ¶¶ 315–19. Defendants argue that both conversion claims fail under Rule 9(b).

### A.       Conversion of YCA Revenue (Count XI)

In Count XI, the Trustee contends that Defendants have wrongfully assumed control of YCA's revenue. In Illinois, a plaintiff stating a claim for conversion must allege: "1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; 2) plaintiff's right to the property; 3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and 4) a demand for possession of the property." *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709, at *10 (N.D. Ill. May 29, 2009). And a claim alleging a conversion of money must identify "a specific fund or

16

specific money in coin or bills." *Id.* (*quoting Mid-America Fire and Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984)). Moreover, the allegedly converted funds must be "capable of being described, identified or segregated in a specific manner." *Indep. Tr. Corp. v. Fidelity Nat'l Title Ins. Co. of New York*, No. 05 C 5749, 2007 WL 1017858 at *24 (N.D. Ill. Mar. 30, 2007).

Defendants are correct that the Trustee's conversion claim fails to satisfy Rule 9(b), because the Complaint does not even meet the requirements for a claim for conversion of money under Illinois law. In particular, Count XI fails to identify specific funds or money. The Trustee alleges that the converted funds are "money [YCA] was entitled to under the Affiliation Agreements" and that TAS "has taken all of YCA's revenue since 2006." Compl. ¶¶ 310–11. The Trustee does not, however, allege a specific amount owed to YCA, nor which Defendants have what amounts. Additionally, the Complaint states that YCA's funds were commingled with other money paid to TAS and other Defendants. *Id.* ¶¶ 210–11; *see Indep. Tr. Corp.*, 2007 WL 1017858 at *25 (concluding that, to form the basis of a conversion claim, funds that have been commingled must "nevertheless still [be] identifiable"). Here, the Trustee has failed to allege that the funds allegedly converted by Defendants are "identifiable or otherwise constitute a specific chattel." *Id.* This is insufficient to state a claim for conversion of money, and so Defendants' motion to dismiss Count XI is granted.

### B. Conversion of YCA Receivables and Equipment (Count XII)

In Count XII, the Trustee contends that Defendants are in possession of cash receivables and taxicab equipment belonging to YCA. As an initial matter, Count XII must be dismissed as to all Defendants except TAS, because the Complaint alleges that Plaintiff has demanded possession of the property only from TAS. Compl. ¶ 319. *See Suburban Buick, Inc.*, 2009 WL 1543709, at

*10 (stating that demand for possession is an element of a conversion claim under Illinois law). And, as to TAS, the conversion claim fails for several reasons. For one, the Trustee simply alleges that Defendants "are in control of YCA's cash and equipment." *Id.* ¶ 318. The amount of money allegedly withheld from YCA by TAS is not identified in the Complaint. And it lists an amount of $2.5 million in receivables owed to YCA, but the current possessors of those receivables are not made clear. *Id.* ¶ 315. As discussed above, conversion claim must allege wrongful possession of a plaintiff's property *and*, for a claim of conversion of money, clearly identify the funds at issue. *Suburban Buick, Inc.*, 2009 WL 1543709, at *10; *Indep. Tr. Corp.*, 2007 WL 1017858 at *24. The Trustee's claim does neither, so the allegations concerning the conversion of YCA's cash receivables are insufficient under Rule 9(b).

Additionally, the Trustee alleges that YCA demanded the return of its "front of cab" equipment (such as mobile data terminals) from TAS, *id.* ¶ 319, but the Complaint also indicates that this equipment is in fact in the possession and control of New YCA. *Id.* ¶ 153. Because the Trustee alleges that New YCA has the property, he cannot state a claim for conversion by pleading that he has sought its return from TAS. The Trustee thus fails to state a colorable claim for conversion as to TAS, and Defendants' motion to dismiss is granted as to Count XII.

## IX.  Lanham Act and Related Claims (Counts XIII through XVI)

In Counts XIII through XVI, the Trustee brings claims under the Lanham Act, 15 U.S.C. § 1125(a) (Count XIII), the UDTPA (Count XV), and ICFA (Count XVI), as well as an Illinois common law claim for unfair competition (Count XIV). These claims are brought against TAS, New YCA, Yellow Group, YCA's officers and directors, and Moberg. Defendants argue that these claims must be dismissed for failure to meet Rule 9(b).

18

The Complaint alleges that from 1996 and 2016, YCA was the only Chicago taxicab affiliation operating yellow taxicabs, *id.* ¶ 321, and that the yellow color was part of YCA's trade dress, which included the YCA logo. *Id.* ¶¶ 158, 321. Yellow Group owns the design mark that was used as the YCA logo and licensed its use to YCA. *Id.* ¶¶ 159–60, 337. The Trustee alleges that, once YCA ceased operations in 2016, Defendants formed New YCA, which began using YCA's trade dress; the only visible difference was that the word "affiliation" in the YCA logo was replaced with "association." *Id.* ¶ 168. Through adopting YCA's trade dress, New YCA was able to tap into YCA's customer base because customers would be unlikely to notice the subtle difference. *Id.* ¶¶ 320–29.

## A.    Lanham Act (Count XIII)

In Count XIII, the Trustee contends that the conduct described above violated the Lanham Act, 15 U.S.C. § 1125(a). There are two types of claims that may be brought under § 1125(a): "likelihood of confusion claims" pursuant to § 1125(a)(1)(A) and "false advertising claims" pursuant to § 1125(a)(1)(B). The Trustee's Complaint is ambiguous as to which type of claim he is pursuing.[4] But trademark ownership is required to bring a likelihood of confusion claim. *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990) (a likelihood of confusion claim requires a plaintiff to show "(1) that its trademark may be protected, and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of [the] plaintiff"). Here, the parties agree that YCA does not own the design mark at issue, and so the Court construes the claim as one for false advertising.

Applying Rule 9(b) to the allegations in Count XIII, the Court finds that they are sufficiently particular as to New YCA to meet the heightened pleading standard. To state a Lanham

---

[4]    The Complaint refers to the Lanham Act claim as one for "unfair competition and false designation of origin." Compl. 58.

Act claim for false advertising, a plaintiff must allege: "(1) that the defendant made a false statement of fact about its own or another product in commercial advertisement; (2) that the statement deceived or has the tendency to deceive a substantial portion of those persons who perceive the advertisement; (3) that the deception is likely to influence purchasing decisions; (4) that the defendant caused the advertisement to enter interstate commerce; and (5) a likelihood of injury." *Ill. Tool Works, Inc. v. Chester Bros. Machined Prods., Inc.*, No. 05 C 5002, 2006 WL 2191982, at *4 (N.D. Ill. July 27, 2006). Here, the Trustee has alleged that: (1) Defendants' use of the color yellow, the design mark, and a similar name (Yellow Cab *Association* rather than Yellow Cab *Affiliation*) constitutes a false statement of fact implying that YCA is affiliated with New YCA; (2) the statement has the tendency to deceive the public; (3) consumers are likely to rely on the statement; (4) Defendants put the advertisements (the taxicabs themselves) into interstate commerce because New YCA taxicabs cross the border from Illinois to Indiana and advertise across state lines; and (5) YCA has sustained "significant damage" to its business because of these actions. These allegations are sufficient for the purposes of Rule 9(b). They clearly identify the involved party (New YCA), the substance of the alleged violation and how it was carried out, the timing of the alleged violation (continuing since 2016), and the location of the alleged violation (the Chicago area). The Trustee has sufficiently identified the "who, what, when, where, and how," and for that reason, Defendants' motion to dismiss is denied as to New YCA.

As to the other Defendants named in Count XIII, however, the Trustee has not met his Rule 9(b) pleading burden. Count XIII references *only* New YCA and states specifically that YCA is injured "by reason of *New YCA's* acts." Compl. ¶ 328 (emphasis added). The Trustee's brief does little to clarify the other Defendants' roles, merely stating that the Lanham Act violation is attributable to "New YCA, through the Officers and Directors controlling [it]." Pl.'s Mem. Opp.

20

at 6–7. Because the allegations are insufficient as to TAS, Yellow Group, Moberg, and YCA's officers and directors, the Court grants Defendants' motion on Count XIII as to those Defendants.

### B. Common Law Unfair Competition, UDTPA, and ICFA (Counts XIV through XVI)

Count XIV is an Illinois common law unfair competition claim. In Illinois, however, common law claims for unfair competition have been codified in the UDTPA. Therefore, because the Trustee has also brought a UDTPA claim, the Court need not address the Trustee's common law unfair competition claim separately. *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d at 884–85; *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998).

In Counts XV and XVI, the Trustee brings claims under the UDTPA and ICFA. Because these claims are based on the same factual allegations as the Lanham Act claim, they are analyzed under the same standard. *See Desmond*, 921 F. Supp. 2d at 884 (stating that when a plaintiff's factual allegations under the UDTPA also form the basis of his Lanham Act claim, the legal inquiry is the same and the UDTPA claim "must rise or fall based on [the] Lanham Act claim"); *VitalGo, Inc.*, 2017 WL 6569633 at *7 n.5 ("[T]he legal inquiry is the same under the Lanham Act as under [ICFA].").

Because the Court concludes that the Trustee has sufficiently pleaded a Lanham Act false advertising claim against New YCA, the Court also finds that Counts XV through XVI of the Complaint state claims against New YCA under the UDTPA and ICFA. Because the Lanham Act claim fails as to TAS, Yellow Group, Moberg, and YCA's officers and directors, the UDTPA and ICFA claims in Counts XV and XVI are also dismissed as to those parties.

### X. Defendants' Motion for Sanctions

Defendants have also filed a motion for sanctions pursuant to Rule 11. The sanctions motion echoes the arguments Defendants offered in their motion to dismiss. They contend that the

Complaint contains false statements of fact, asserts claims precluded by the bankruptcy proceedings and barred by the statutes of limitations, and fails to comply with the requirements of Rule 9(b). Defs.' Mem. Supp. Sanctions at 5–15, ECF No. 37.

Under Rule 11(b)(1), a court may impose sanctions if a plaintiff makes legally frivolous arguments or fails to make a proper prefiling inquiry of the facts. *See Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 265 (7th Cir. 1999). As discussed above, the Court disagrees that the Trustee's claims are precluded by the bankruptcy proceedings or are facially barred by the statutes of limitations. Furthermore, while the Court agrees with Defendants' contention that Rule 9(b) applies, the Court declines to sanction a party for merely failing to meet a pleading standard. The majority of the Trustee's claims meet the Rule 9(b) pleading standard, and to the extent that they do not, they have been dismissed.

As to the actual truth or falsity of the Complaint's allegations, the Court will not impose sanctions on that basis at this stage of the proceedings. On a motion to dismiss, the Court accepts as true all of the allegations contained in the plaintiff's Complaint. *Iqbal*, 556 U.S. at 678. And the "misrepresentations" that Defendants point to in their motion for sanctions are, by and large, factual disputes between the parties that cannot be resolved at this stage.[5] The Court therefore denies Defendants' motion for sanctions.

---

[5] Defendants' motion for sanctions seeks to impose sanctions in part based on the Trustee's Complaint misstating that Marc Jacobs sued YCA in 2005, when in fact YCA was added as a defendant in that lawsuit in 2007. *See supra* note 2. The Court acknowledges the error but declines to impose sanctions on that basis. As the Trustee points out, the allegations in the Complaint do not depend on YCA being a defendant in the Jacobs case in 2005. Pl.'s Mem. Opp. Sanctions at 6–8.

## Conclusion

For the reasons provided herein, the Court grants in part and denies in part Defendants' motion to dismiss pursuant to Rule 12(b)(6) [22].  Defendants' motion for sanctions [36] is denied.

The Court grants the Defendants' motion to dismiss Counts II, III, XI, and XII.  Additionally, the Court grants the Defendants' motion to dismiss Counts VI and VII as to Moberg, Tessler, and Sakata; Counts VIII and IX as to YMH, CLMH, Yellow Group, People Mover, and Yellow Cab Partners; Count X as to Moberg, Sakata, Tessler, YMH, CLMH, Yellow Group, People Mover, Yellow Cab Partners, and New YCA; and Counts XIII through XVI as to TAS, Yellow Group, Levine, Corrigan, Sakata, Moberg, and Tessler.  Accordingly, all claims pending against Yellow Group, YMH, CLMH, People Mover, and Yellow Cab Partners are dismissed.

Defendants' motion to dismiss is denied as to Count I, and Counts IV and V.  Additionally, the Court denies Defendants' motion to dismiss Counts VI and VII as to Levine and Corrigan; Counts VIII and IX as to TMM; Count X as to TAS, TMM, Levine, and Corrigan; and Counts XIII through XVI as to New YCA.

In the event that the Trustee wishes to file an amended complaint, he should file a motion seeking leave to file an amended complaint, attaching a proposed amended complaint, by October 16, 2018.


**IT IS SO ORDERED.**          **ENTERED  9/25/18**

**John Z. Lee**
**United States District Judge**