IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL K. DESMOND, not Individually but as Chapter 7 Trustee For the Bankruptcy Estate of YELLOW CAB AFFILIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> TAXI AFFILIATION SERVICES LLC, MICHAEL LEVINE, PATTON R. CORRIGAN, EVAN TESSLER, GARY SAKATA, JOHN MOBERG, YELLOW CAB ASSOCIATION, INC., and TAXI MEDALLION MANAGEMENT LLC, <br><br> Defendants. | No. 17 C 8326 <br><br> Magistrate Judge M. David Weisman |

## MEMORANDUM OPINION AND ORDER

Defendants have filed a motion in limine to exclude the opinions and testimony of plaintiff's expert Patrick O'Malley. For the reasons set forth below, the Court grants in part and denies in part the motion.[1]

### Discussion

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Rule 702 permits a witness to testify as an expert if she has specialized knowledge that will help the jury understand the evidence, her testimony is based on sufficient facts or data and is the product of reliable principles and methods, and she has applied

---

[1] The Court assumes readers are familiar with the complex factual background plaintiff alleges in the complaint (ECF 1) and the district court summarized in its memorandum opinion and order on defendants' motion to dismiss (ECF 62).

those principles and methods to the facts of the case. Daubert instructs a "trial judge [to] ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

One of the opinions O'Malley offers is that Yellow Cab Affiliation, Inc. ("YCA") was insolvent beginning in 2007. (ECF 303-1 ¶¶ 42-45.) Under both the federal and state bankruptcy codes, an entity is insolvent if "the sum of [the] entity's debts is greater than all of [the] entity's property, at a fair valuation." 11 U.S.C. § 101(32); 740 Ill. Comp. Stat. 160/3(a). Defendants argue that O'Malley's insolvency opinion is infirm because he did not determine the fair market value of YCA's property in 2007 and beyond. (*See* ECF 303-2 at 53-54 (O'Malley testifying that his report does not provide a fair market value for YCA's assets).) Plaintiff counters that O'Malley calculated YCA's assets, liabilities, and stockholder equity every year from 2007 through 2015 using YCA's financial statements, and each year YCA's liabilities exceeded its assets. (*See* ECF 303-1 ¶ 42.) But YCA's financial statements do not necessarily reflect the objective value of its assets. In fact, plaintiff argues that the finances of YCA, TAS, and the other related entities were purposefully commingled and their financial records deliberately muddled. (*See, e.g.*, ECF 311 at 2-3.) Plaintiff cannot make that claim and simultaneously assume that YCA's records have integrity, as O'Malley does here. Because O'Malley accepted the value YCA assigned to its assets rather than assessing their fair market value, the methodology O'Malley employed in reaching his conclusion that YCA was insolvent as of 2007 was flawed. Further, O'Malley's reliance on financial statements that plaintiff claims are unreliable undermines the data relied upon in reaching the conclusions. While the integrity of the data relied upon may become a jury issue, here, where the plaintiff's theory is that the underlying data is not reliable, this approach raises methodology issues. Plaintiff's expert is relying on data that plaintiff asserts is unreliable to reach his

2

conclusion. *See Loeffel Steel Prod., Inc. v. Delta Brands, Inc.,* 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005) ("[A]an expert cannot rely on data of unknown reliability.").

Defendants also contend that O'Malley's damages opinion should be excluded because it is premised on the assumption that TAS was not entitled to any compensation for the services it provided to YCA. (ECF 303-2 at 79 (O'Malley testifying that his opinion that YCA paid TAS $18.7 million from 2011 to 2014 and $37.4 million for the period 2007 to 2014 assumed that TAS was not entitled to any compensation from YCA).) As plaintiff explains, however, O'Malley's opinions are based on the assumption that the transfers of money from YCA to TAS were actual intent fraudulent transfers. *See* 11 U.S.C. § 548(a)(1)(A) (stating that the trustee may avoid any transfer incurred by the debtor if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or would became indebted); 740 Ill. Comp. Stat. 160/5(a)(1) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . , if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor."). Thus, O'Malley's assumption that TAS was not entitled to compensation from YCA for the years 2007-14 does not invalidate his opinions. As this underlying factual assumption is one of the primary disputes in the matter, defendants are free to explore O'Malley's reliance on it, but the assumption itself does not invalidate the expert opinion. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

Alternatively, defendants say O'Malley has no basis for opining that TAS used YCA's money to pay management fees and debt service because he did not trace YCA's funds into or out

3

of TAS's account.[2] One of the accepted methods of tracing is the pro rata method in which "restricted funds are presumed to comprise a fraction of every transfer out of the account equal to the ratio of restricted to total funds in the account." *In re Poulos*, 636 B.R. 535, 541 (Bankr. N.D. Ill. 2022). This is the method O'Malley used. He analyzed TAS's general ledger and concluded that TAS commingled its funds with those of YCA, that all of the commingled funds in TAS's accounts were derived from taxicab operations, seventy-two percent of TAS's revenue was attributable to YCA's taxicab operations, and thus seventy-two percent of the commingled funds in TAS's accounts were generated by YCA's taxicab operations.[3] (*Id.* ¶¶ 10j, 19; ECF 303-2 at 74-75.) In short, O'Malley's alleged failure to trace YCA's funds to TAS is not a basis for barring his testimony.

Defendants also argue that O'Malley's damages opinion is flawed because it assumes that all of TAS's revenues were derived from servicing taxicabs and ignores revenues TAS received from other operations. Plaintiff admits that O'Malley made this assumption but says it is not disqualifying: "While Defendants may argue that the percentage should be different [than seventy percent] because TAS collected amounts for other related companies, the jury is entitled to consider O'Malley's expert view that *all* amounts collected by TAS ultimately derived from cabs on the road." (ECF 311 at 12) (emphasis in original). The Court agrees that O'Malley's assumption regarding the source of TAS's revenues goes to the weight of his opinion, not its admissibility. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013) ("[A]n expert's

---

[2] Plaintiff says O'Malley tried to analyze TAS's bank records but could not complete the task because of "the state of the records of YCA and TAS and the accounting . . . methodologies employed." (ECF 303-2 at 89-91.)
[3] Defendants argue that O'Malley cannot opine that TAS "paid management fees and debt service using YCA funds" because "he did not analyze the bank account." (ECF 303 at 12.) As noted above, however, O'Malley said such an analysis was impossible given the state of TAS's bank records.

reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility.").[4]

Defendants also contest O'Malley's opinion that TAS/YCA funds were used to pay $15.3 million in debt service for a loan from the North Fork Bank, which refinanced a previous loan other affiliated entities used to buy taxi medallions. (ECF 303-1 ¶ 10i.) Defendants say this opinion has no basis in fact because O'Malley did not see the documents pertaining to the previous loan. But O'Malley does not say that YCA funds were used to service the loan that preceded the North Fork Bank loan. Thus, his failure to review the terms of the previous loan does not doom his opinion.

Alternatively, defendants argue that there is no legal basis for O'Malley's opinion that YCA is entitled to a share of the profits that the affiliated entities made from selling medallions they bought with the proceeds of the loan that was refinanced by the North Fork loan. (*See* ECF 303-1 ¶ 10k.) Plaintiff argues that O'Malley's opinion is supported by Illinois fiduciary law, specifically *Ray v. Winter*, 367 N.E.2d 678, 683 (Ill. 1977) In *Ray*, the Illinois Supreme Court held that a fiduciary relationship arose when defendant agreed to buy land for plaintiff and a constructive trust arose when he did so and then refused to convey the land to plaintiff. 367 N.E.2d at 682-83. The appropriate measure of damages, the court said, was the profits plaintiff lost as a result of defendant's refusal to give him the property. *Id.* at 684.

Under the principles set forth in *Ray* and assuming the accuracy of plaintiff's version of the facts, YCA would be entitled to the profits it lost when TAS used YCA's funds to service the North Fork Bank loan. But YCA would not be entitled to profits from the sale of medallions that

---

[4] The same is true for O'Malley's alleged financial interest in the outcome of the trial. *See Ameritox, Ltd. v. Millennium Health, LLC*, No. 13-CV-832-WMC, 2015 WL 1520821, at *11 n.14 (W.D. Wis. Apr. 3, 2015) (stating that evidence of bias goes to the weight of an expert's testimony not its admissibility).

an affiliated entity bought with the proceeds of the loan that was refinanced by the North Fork loan. Under *Ray*, YCA is entitled to its lost profits resulting from TAS's use of YCA's funds, but *Ray* does not support the proposition that YCA is entitled to the gains achieved by the affiliated entities as a measure of damages. *Id.* at 684 ("[P]laintiff is entitled to recover the loss of profits resulting from [defendants'] failure to convey the property to [plaintiff]"). Because state fiduciary law, which is all plaintiff offers, does not support O'Malley's opinion that YCA is entitled to profits from the sale of medallions, O'Malley cannot offer that opinion at trial.

**SO ORDERED.**  ENTERED: October 12, 2022

**M. David Weisman**
**United States Magistrate Judge**